First case this afternoon is Replacement Services v. Enservio, Inc. And Mr. Niehoff, as you proceed when you're ready. I'm ready. Thank you. Good. Your Honor. Counsel. May it please the Court. My name is William Niehoff, Bill Niehoff. I'm here on behalf of Enservio, Inc. Today, in connection with this appeal, this case involves the question of whether this Court should enforce a clear arbitration clause agreed to by the parties. Parties have an underlying dispute as to whether or not Enservio owes Replacement Services commissions from an agreement dated February 15, 2007, and which expired by its term in February of 2009. The agreement contains a clear arbitration clause that provides that any controversy, dispute, or claim arising out of the formation interpretation, performance, or breach of the agreement should be resolved by binding arbitration in accordance with the commercial rules of the American Arbitration Association. The arbitration clause, paragraph 16 of the agreement, also contains a sentence that indicates that the parties may have the right to seek provisional or ancillary remedies such as injunctive relief. We believe that this term is properly limited to relief of a temporary or subsidiary or secondary danger, not, as was handled in the Court below, dealing with issues of contract construction, breach, interpretation of contract language, and orders of mandatory injunction. Replacement Services has admitted on the record of the Court below that arbitration is the proper form for resolving this dispute. It also, by its counsel, served a letter on Enservio dated September 27, 2011, in which it had previously threatened to bring an arbitration action on its own. When Replacement Services sent a demand letter to Enservio identifying some key issues of the dispute, Enservio, properly and as provided under the agreement, filed for an arbitration under the AAA. The very next day, Replacement Services filed in court seeking an injunction, seeking to halt the arbitration, and seeking to obtain substantial discovery. It claims it was relevant or related to the AAA agreement. To be clear, the arbitration proceedings had just been begun. Nothing had been decided in the arbitration proceedings at all. So Replacement Services was, in essence, seeking injunction-staying arbitration based solely on the hypothetical possibility that it might not get all of the discovery it wanted, even though it had expressly agreed to be bound by the AAA rules. As we've pointed out, we don't believe that what they sought to foreclose was either provisional or ancillary. In fact, it was intended to substantially or perhaps completely displace the discovery function and other contract interpretation provisions or procedures that should properly be resolved in the arbitration. In the complaint, Replacement Services sought two forms of injunctive relief, the first requiring that access be given to documents, books, and records as are as self-determined or relevant to the claims in the arbitration and a stay of the pending arbitration. And so we will oppose the motion, move to dismiss the complaint, and also compel arbitration. On January 6th, a hearing was held at which the testimony of one witness was presented, Mr. Artinger. Hours after the hearing was conducted, the court on its own added orders addressing issues of contract construction, which had not been raised, briefed, or noticed by the parties. This includes such issues as whether or not the contract had terminated, notwithstanding the language providing for automatic termination after two years from its signature, from its entry. Issues addressing the time limits or orders addressing the time limits set forth in the agreement, a finding that the interviewee had in fact breached its obligations under Paragraph 16, or under Paragraph 6, excuse me, and also that the relationship of the parties, notwithstanding express language in Paragraph 10 of the agreement that the parties were independent contractors, the court found that the relationship was one of fiduciary. We believe that the present case, the present issues, the issues that were before the court below, clearly constitute a dispute that arises out of the operation of the sections that arises out of the contract and that the parties have contracted for AAA rules to apply. The matter should have been dismissed and sent back to the AAA for arbitration. There is an arbitration pending, as this court knows, and entered to say, not only at the court below but proceedings below on the mandatory injunction calls for arbitration. Just a few additional background facts may be relevant to the action. The agreement that's underlying this transaction was a cooperation and marketing agreement. It was signed in February of 2007 and expired unless affirmatively extended. After two years, it was not affirmatively extended. The agreement expired in February of 2009. As indicated in Paragraph 10 of the agreement, the parties identified the relationship as that of independent contractors, not as agents, not as joint ventures, not as partners, not as any other relationship which might give rise to a fiduciary obligation. Obviously, the parties agreed, we believe, under Paragraph 16 to resolve disputes pursuant to the arbitration clause. On November 2, 2009, nearly nine months after the two-year contract had expired, the president or CEO of R.S. made an informal contact inquiring about commissions. According to this person, Mr. Ardinger, he reported that Inservio said it was owed nothing. R.S. did nothing more for another year until on January 27, 2011, it sent a $711 check and a one-page accounting to Inservio claiming that these were commissions that were due. This one-page accounting was something that had been left out of the trial court record. This court granted leave that that be considered, and it is part of the record here. Following January 27, 2011, R.S. waited another eight months before contacting Inservio. That's the September 27, 2011 letter in which counsel for R.S. wrote and made demand for commissions and threatened to start an arbitration proceeding, which is exactly what Inservio did in December of 2011. During this prior contact, R.S. did not request a review of Inservio's records pursuant to the record-keeping requirements set forth in Paragraph 6, and I would refer the court to the transcript, page 63, where the trial court asked that question directly of the witness. The history is set forth in there, and as I've described, there was a filing on December 22 of the complaint for injunction, a motion for preliminary injunction seeking only a stay at the arbitration, not access to the books or records was filed on December 27. January 4, Inservio filed a motion to dismiss and compel arbitration. January 5, R.S. submitted a brief claiming that the hypothetical possibility that it might not get all the discovery it desired constituted irreparable harm and inadequate legal remedy. On January 6, the hearing was held. Hours later, after the hearing had concluded, the initial order was issued. On January 9, a more formal order was issued. Inservio objected to that order and also moved to reconsider the court's earlier determination on January 6.  Inservio had said that it would agree to make available records if, as requested under Paragraph 6, Paragraph 6 contains very strict limitations as to what has to be provided and how long things have to be provided, if that's an element or not. It's certainly something the parties agreed to as part of the contract. You agreed to voluntarily do that. Did you voluntarily produce any documents? No, Your Honor, because we had filed a motion for consideration. What happened after the author had followed Paragraph 6, mind you, and that's the important point, is that the plaintiff served a 14-page demand for production which went far beyond anything contemplated by Paragraph 6. And so somebody at some point is going to have to determine what Paragraph 6 requires and what compliance with that is. It's our position. The only thing is they sent you something that you thought was a reasonable request to produce documents. Yes, Your Honor. You must have in mind what would be a reasonable request. Yes, Your Honor. Why didn't you provide that? Because we had asked, as we said, Your Honor, the motion to reconsider. Our initial position is that the issue of what should be provided is to be determined by the arbitrator, not the circuit court. It involves contract interpretation under a number of paragraphs, and we feel it's essential. It's certainly involved and wrapped up in the language of the contract. God here has previously indicated my client has agreed to do that voluntarily, irrespective of anything that happened here, and certainly would do so pursuant to any lawful order, as it is a good corporate citizen. Why did you even make that statement? Didn't you make that statement for the trial court to rely on it in some way in making its ruling? We reserved, first off, Your Honor, we reserved our rights under the agreement, in the language preceding that and also preceding my statement to the court. Secondly, the court was concerned that there may not be proper discovery. We were attempting to alleviate that concern by saying that paragraph 6 governs discovery, and whether the arbitration are the court proceeding, we believe the arbitration being the appropriate forum. Those documents certainly would be produced pending a lawful order. That's what we intended to convey by that. That's what we meant. But it really had nothing to do with what was going on. I mean, you said it, but the court couldn't enforce your agreement. The court could do nothing about it if you decided not to voluntarily produce it. I think that would be the subject of proceedings later. In the arbitration. That's correct. I might not disagree with you on that, but it did strike me as to why you'd even bring it up in front of the trial court if it was going to be the arbitrator's decision. Because the plaintiff was complaining of a case that would not have any opportunity to get discovery in the arbitration. Our position is that the contract has a provision for books and records that is an item in the contract. Because it's in the contract, it's subject to the arbitration clause. He needs to make that request to the arbitrator. And if the arbitrator says, and this is something that the parties couldn't predict in advance, can't tell you now what the arbitrator would rule, they may get everything they request. But you tell the trial court that, and the trial court thinks, well, they've already agreed to do this. I'll go ahead and order them to do something they voluntarily agreed to do. Seems like it makes it easier for the trial judge. It would almost appear to me that there was an agreement here. To do this, I'll just go ahead and tell them to do something they've already agreed to do. And that's why he entered the argument he did. Yeah, we respectfully disagree with that conclusion, Your Honor. We think it's clear that what we were talking about is what the obligation is to produce books and records under the contract. And even if this matter is tried before the court, ultimately, we're going to have a dispute about what is required under paragraph 6. It's not our position.  So we would have to have some sort of secondary process about what that meant. Our position is that paragraph 6 is clear. It sets forth the limits on the records that are discoverable or providable under the contract. We believe, and we don't believe we've waived that, that that decision should be made by the arbitrator in connection with the contract language and interpreting the provisions. We've had two main discovery fights over the years. And usually it's nice if the party produces what they think is reasonable and then fight over what's unreasonable. It seems to get to it quicker. But that's only mine. You go ahead. I'm taking up too much of your time. No, no, no. I'm happy to address the concerns the court has. I think the briefs obviously set forth the arguments that we want to make and certainly would like to respond to those issues that you feel are important. I would note that one of the things that goes along with all this is that the plaintiff produced a two-page letter. It should have been three pages in January. He testified that the page that was missing wasn't accounted for. It's a single page. It's a spreadsheet. It's not the 14 paragraphs that are out there that we should request. As we've indicated, we think that paragraph 6 is in the contract, what it says, controls. Because it's wrapped up with other paragraphs of the agreement, including 4, 10, and 14, that what that means is properly for the arbitrator to decide. In any event, Your Honor, we don't believe there's been any kind of a waiver. And we believe we've attempted to protect that by filing motions to reconsider, by bringing this appeal, and certainly attempting to get a final resolution to these issues. We have obviously addressed a number of the issues related to the legal standing in the case. We believe that what the court issued was a mandatory preliminary injunction, highly disfavored by courts. There was no showing of extreme emergency or great necessity. The only justification offered was that we somehow may not get discovery that we feel we're otherwise entitled to. This is purely speculative, purely hypothetical. Moreover, the plaintiff in the case below delayed for a period of over 2 years, from November 9, 2009, to December of 2011, before attempting to enforce what it believed was right to our court. Also, the court, in the January 6th and also in the second order on its own, raised paragraph 6 for the first time and granted relief. We don't believe this ground was raised by plaintiff. We believe they still easily avoided the mention of paragraph 6 in the underlying plaint because it wanted to avoid it, both in terms of the contract, which would then kick this into arbitration. Had the court granted the motion to arbitrate, as we believe it should have, none of these other issues would have even been addressed. They would have been raised and resolved in connection with AAA rules, as the parties agreed. We also believe there's no showing of a fiduciary relationship. We cited the case R.J. Management v. SLRB Development Corporation, which indicates pretty close to being on point with these kinds of transactions involving commissions. The case holds that a fiduciary duty does not arise from an arbitration contract. In addition, obviously, paragraph 10 of the agreement holds that the parties are independent contractors to one another. We don't believe that the plaintiff in the underlying case showed any irreparable harm. The AAA rules that they agreed to follow and provide by are contained provisions for discovery. There's multiple places where that's addressed. We don't believe that a lack of adequate legal remedy has been shown because, likewise, the AAA rules provide for discovery. Do you think the AAA rules were incorporated within the terms of the agreement? Absolutely, they were. And your Honor, they say expressly AAA rules, and the AAA rules themselves have a provision that says that mentioning the AAA rules incorporates all procedures as they've set forth therein. And there are discovery rules under the ordinary rules. I think it's R21. There's also rules that exist under the large case rules, L4. The arbitrator has a discovery conference, I believe, and then the parties go over what they want and they can request that. That's one of the purposes of arbitration is to streamline these kinds of issues and address them there. Which rule do you think is controlling R21 or L4? I think they can be read together. Either one? Even though? Okay. The L cases apply to those where claims are greater than $500,000. I believe that there may be a claim for more than $500,000. It's a large case. That's what the L stands for. So the parties agreed to this in 2007 when they signed the agreement. Both parties are commercial entities. They were represented by counsel. In fact, I believe Mr. Ardinger testified he was represented by counsel. He has in this case currently Mr. Hennis specifically with the same firearm. We believe that the court error, the underlying court error in its initial decision in failing to dismiss this for arbitration, we believe that the claims raised all clearly within the terms of the agreement require its construction and handling the issues of discovery in a separate civil proceeding simply creates the risk of inconsistent results and also potentially increases greatly the expense. This isn't necessarily a question of whether the court itself is confident or the arbitrator is confident to decide these issues but what the parties agreed to in the contract. And they did agree that these issues should be resolved by the arbitrator. Thank you. Thank you. Mr. Hennessy. May it please the court and counsel. I think it's important starting off to realize that one of the thrusts of the argument given by the appellant is the court should have no place in this because there's an arbitration clause. But what they ignore is that the parties expressly gave the court a place in their relationship by the carve-out that they agreed to. Nothing in this section, and we're referring to the arbitration provision, nothing in this section shall limit the right of either party to obtain from the court provisional or ancillary remedies such as but not limited to, injunctively, before, during, or after the pendency of any arbitration proceeding brought pursuant to this agreement. So one of the questions I think that the court has to address, why in the world in light of that does the arbitration proceeding trump the rights that replacement services has under section six of the agreement? The parties gave the court the right to intervene upon the application of either party. This is not the typical arbitration provision where there is no carve-out, where the court has no or very limited role to play. The parties agreed to, in essence, to a court proceeding before a Judge McGuinn addressing issues such as the one that deals with section six. What's unique about this agreement is normally, if we're ever into an agreement, I agree to build you ten widgets and you agree to pay me X dollars for those widgets. I deliver the widgets, you give me the X dollars. Here, the price, if you will, the consideration, monetary consideration, is in essence determined by the other party. This was a situation where replacement services and Inservio both serve different niches of the insurance market. Replacement services, precious jewelry and the like, and Inservio, consumer goods. So they thought they'd partner. Hey, we've got good clients that you could service and you've got good clients that we could service. And the way the monetary consideration was to be determined in the first instance is that the other party would have to rely on the good faith and fair dealing of the opposite party. The parties realized that that might not work all the time and they put section six into the agreement. And that was the purpose of section six. What happened as part of the factual background that hasn't been addressed, I was in discussions as the record reveals, I believe it's plaintiff's exhibit 14, I was engaged in discussions with a lawyer on behalf of Inservio. And we were discussing the right to and the scope of any accounting that would be, procedure that would be engaged in. While we were engaged in these discussions, Inservio, through another law firm, files a preemptive demand for arbitration, seeking a declaration that my clients owe nothing. Now, putting aside for a minute the fairness of those facts, it gives rise to the very need for a section six proceeding. We shouldn't have to go into this arbitration proceeding without having an opportunity to exercise the remedy which we have under the contract. There's nothing that says the arbitration trumps what the court can do. And it only seems fair to us to have the accounting proceed first and expeditiously under the court's guidance and then proceed to the arbitration. The fact that there are permissive, undefined, and discretionary discovery so-called procedures in the arbitration rules does not change the fact that the parties agree to an accounting, a detailed accounting procedure, in section six of the agreement. And I think it's, the court has to keep that in mind. The trial court was not an orphan or an interloper or an outsider to these proceedings where, in the usual arbitration law sense, they were, by direction of the parties and by the allowance of the parties, a direct participant at least equal to, if not above, the arbitrator. And that is one of the ways we respectfully suggest that you have to look at this. Aren't you contending that they briefed section six by not providing the accounting? Yes. So they briefed the agreement. Okay. Yeah. And you agree that the contract contains an arbitration clause. It does indeed. That is designed to resolve all disagreements. Well, it also has to carve out, Your Honor. It has to carve out. It has to carve out. And if the court is going to issue, a trial court is going to issue an injunction, it has to make findings that would justify the issuance of an injunction. That doesn't mean, I'm sorry, Your Honor. Go ahead. That doesn't mean that the arbitrator is going to be bound by those findings. It's for purposes of the injunction. Now, they, you know, the arbitrator is going to make his or, well, it's going to be his decision. We know who the arbitrator is. We'll make his decision. But the fact that the court has to make certain findings in order to get to the point where it can issue an injunction is of no consequence to the arbitration proceedings. They're not going to be binding on the arbitrator because of this dual jurisdiction aspect. When your client entered into this contract, and I think both sides would be considered sophisticated people, represented by lawyers and their, you know, substantial business entities, they entered in an arbitration agreement. Were the rules of the American Arbitration Association incorporated into that agreement? Yes. Yes, they were. Rule 21, which your client agreed to before anything went wrong, agreed that at the request of any party or at the discretion of the arbitrator, consistent with expedited nature of arbitration, the arbitrator may direct the production of documents and other information and the identification of any witnesses to be called. It could be argued that you had agreed to who would decide what documents are produced, and you're not happy with this rule. Rule 21, you're not happy with, and you want more than this rule, so you went to the trial court. And we have a contractual remedy that the court has the power to order because it is part of the remedy that the court can engage in that is at least equal to if it does not trump what the arbitrator can do. We understand your argument. We've had our fair share of number of arbitrations here that we've gone to the Supreme Court on, and they've had to look at these rules. And Justice Scalia, in this case, Compute Credit Corporation v. Greenwood in 2012, just repeats what he said before. It requires courts to enforce agreements to arbitrate according to their terms. And it looks like the term specifically addressing discovery is 21. Well, Your Honor, the court, much to our chagrin, has not stayed the arbitration. What this court did to hold everything in abeyance so we could sort this all out, but the court did not stay the arbitration. So what we think is appropriate is why should a remedy that is a part of the contract, why can't that be, and in light of the agreement of the parties, should be a subject of an injunction to enforce? Obviously, the parties contemplated before they throw down the gauntlet, go to an arbitration proceeding, that the party that would have an opportunity to do the contractual discovery that is allowed in Section 6. And that's the reason they put the carve-out in there, in case one of the other parties, in this case the servio, refused to do that. Now, all of a sudden, because there are discovery provisions of some sort, in that all of a sudden that trumps the contractual remedy. And we don't think it does. The trial court did not stay the arbitration. And if this court does not stay the arbitration, then we would ask that it remain in this case to the trial court with instructions to compel the parties to expeditiously go through the accounting procedure. I think addressing some of the other issues, Your Honor, as we point out in our brief, this appeal is moved. They agreed to the Section 6 remedy. I mean, of course, we filed a motion to dismiss the appeal, and the court denied it. But all we need to do is quote their own words. I mean, we don't have to gloss the words. We don't have to spin the words. They consented. They said they would voluntarily comply with Section 6. Now, they said they wanted to preserve their right to appeal. How the heck do these cases get up to the Supreme Court, where the Supreme Court says, hey, there was consent and acquiescence unless there was an appeal? It's like saying, well, yeah, this is a consent judgment. We'll consent to the judgment, but we reserve our right to appeal. Well, okay. You file your notice of appeal and hope that the court doesn't say it's frivolous because you agreed to the consent judgment. It means nothing. They agreed to this. They agreed to it, and this court should take them at their word. Certainly, the matter was properly before the court. We discussed. We had to prove to the court's satisfaction that we have a right to an accounting. That's one of the elements of an injunction, that we have an ascertainable right to relief. We proved that. They knew that we were talking about that. They didn't say one word to object. When we got into a discussion of Section 6, they didn't say, oh, judge, this is outside the scope of the pleadings. They did not say, judge, this has not been raised by the pleadings, and we can't discuss it. They didn't say, judge, we never anticipated this. We want a continuance of this hearing. We all know, as any new lawyer who's had two months of civil motion practice knows, that if there's a problem with the pleadings, you don't go to a hearing with it. You raise it so they can be addressed. There was nothing said, no objection at all. Rather than what there was, was an argument on the merits of this. And then the judge is faced with the motion to reconsider, which basically says we consent to the relief that the court has indicated or would indicate that it would award. I don't know. I'm talking about, and I want to speak this diplomatically and politely. I guess the most polite word to say is sandbagging the trial judge. I mean, if that isn't sandbagging, I don't know what it is. Some of you have been trial judges, and you know you've got to be able to believe what the parties say. And it was a shock to us, and I think it was a shock to the court, when they did not do what they had agreed to do. What do you envision happening if we send it back? Judge McGlynn then decides what is reasonable, tells them what to do. They don't do it. They're held in contempt, and we're back here. Well, I would hope that that wouldn't be the case, Your Honor. I mean, I would be, you know, it's one thing to be held in contempt on an issue of first impression in the appellate. It's a different thing to be held in contempt after the appellate court has given guidance, and you're acting contrary to that guidance. I would suspect, and I would hope, that they would obey whatever mandate the court issues in this case. I would hope that we wouldn't be back up here on appeal for contempt. On the subject of the pleadings that have been alleged, we reached an agreement. We talked about Section 6 at the hearing. For the first time on their motion to reconsider, they say, oh, there was no allegation of a breach of the agreement, so therefore, Judge, we want to go back in time and have you think as though we made this objection at the hearing. You can't do that. I mean, we all know that you can't do that. You make an objection at the time. You don't let the proceeding go, and then when you've heard from your counsel in Boston or wherever, you decide that, hey, that was outside the scope of the pleadings, and therefore the injunction should be done away with. I think getting back to the agreement, I think that when the court goes into conference and decides this case, they have to consider everything, but certainly they have to consider, they have to get outside, if the court is otherwise in a mindset, that this is an arbitration case. And we know what Justice Scalia said, and we know what the Illinois Supreme Court has said, and, boy, we better just say arbitration, arbitration, and be done with it. The difference is that the trial court, Judge McQuinn, was given a place in this proceeding by the parties. It is not the typical arbitration proceeding, and he narrowly enforced a portion of the agreement, the accounting portion, that would not prejudice, wouldn't assault the arbitration process in the slightest. He had great respect for the arbitration process. In light of his denial of our request to stay the arbitration, he expected, I'm sure, well, I know he ordered expeditious compliance with Section 6, and he certainly would have expected it in light of what was said at the trial court. On our cross-appeal, Your Honor, we have asked that the court stay the arbitration. We realize that the question of a stay is a matter for the discretion of the trial court, but I think this is a special case. Again, in light of their stonewalling of the court, trial court, on their agreement to engage in Section 6 proceeding voluntarily, I can anticipate that only a staying of the arbitration will hold their feet to the fire. In light of their failure to live up to their prior representations, a staying of the arbitration with the direction to the parties, both of us, as well as the court, to get this thing resolved expeditiously, and then when the trial court is satisfied that the accounting has been done according to proper process, that it then lift the stay and let the arbitration proceed. That the court could do that easily, and certainly with the guidance that this court could provide with the direction to do it expeditiously, the court would have added incentive to do so. In summary, I think we've outlined in our brief the major points in our argument, and I'd leave you with this. This is a, well, this court is an appellate court. The trial court was a court of equity, and I suppose that this court, because it's considering a case that is an equity case, is a court of equity as well. There is nothing at all unfair or improper about ordering a company that has all the information that we need to determine what our commissions are, as we outline in our brief, to engage in a contractual remedy expeditiously to enable us to defend. That's not a prejudice to the arbitration proceeding. It's not saying that there are rules, aren't there rules, but it is recognizing that the trial court had a place, and a proper place, and was told that there would be compliance, and there was no compliance. I think equity dictates an affirmance of the trial court in its issuing of the injunction, and in light of the recalcitrance of Insurio, I think it, with all due respect to the trial court, justifies a reversal of the court's orders insofar as they deny a stay of arbitration. Thank you very much. Any rebuttal? Thank you again for the opportunity to be here this afternoon and speak to you and address the questions that you might have. I think you've hit the nail on the head. When a matter is contained in a contract that has an arbitration clause, the remedy is to dismiss the case and send it to arbitration. If that had been done on January 6th, that would have been the end of the matter. That's what should have happened. That's what still should happen. We believe that Insurio has acted in good faith throughout and has attempted to preserve its rights and see that the right thing is done. Counsel has admitted that they're seeking information pursuant to Paragraph 6. As Your Honor pointed out, that's contained in the contract. The contract also contains the arbitration clause. Therefore, this matter is properly before the arbitrator as to what Paragraph 6 means and what they're entitled to. And this dovetails with an argument we made at the time in the trial court, is that it's impossible for us to know what the arbitrator may order. He may order everything they want. He may order something different. It's unknowable, and it's speculative to order an injunction on the basis that there's irreparable harm because you're not getting a civil court remedy. I think that that's critical, and I do believe the court hit it on the head when it identified its experience with arbitration cases and the fact that it should be dismissed and sent to arbitration, which the parties agreed to. I think that the issue with Paragraph 6 is explained, as I've tried, that Paragraph 6, if you look at the item, has a very limited scope, and it has identifiable issues. For example, you maintain records for two years after the calendar year in which the activity takes place. There are limitations there. The request for production that we receive from the plaintiff amounted to 14 paragraphs, and we completely deny it. Therefore, no matter what happens, whether it's trial court or arbitrator, somebody's going to have to resolve that issue as to what's really required. The orders, they comply with Paragraph 6. We have a profound disagreement, let's put it mildly, between Plaintiff and RS Services and Inservio as to what that actually means. Somebody's going to resolve it. The parties had agreed before anything happened that that issue would be resolved by the arbitrator, and we believe that that's where this matter truly belongs, and that the desperate attempts in the trial court to create controversy where there is none shouldn't be encouraged. This matter should be dismissed. The orders will have vacated, and the orders sent to arbitration. Thank you. Thank you. Thanks to both of you for your arguments this afternoon. We'll take the matter under advisement and try to get to a decision as early as possible. Thank you. Thank you, Your Honor.